UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

MINH NGUYEN,  :
    Plaintiff,  :
          :    3:10-cv-455 (CFD)
    v.  :
          :
PEOPLE'S UNITED BANK,  :
    Defendant.  :

## RULING ON MOTION FOR SUMMARY JUDGMENT

**I.    Introduction**

This is an employment discrimination case in which the plaintiff, Minh Nguyen, brings a Title VII claim and a Connecticut common law claim for negligent hiring and negligent supervision against her former employer, People's United Bank ("the bank"). In this motion, the bank moves for summary judgment on all claims pursuant to Rule 56 of the Federal Rules of Civil Procedure.

**II.    Background**[1]

Nguyen, a Vietnamese woman whose first language is Vietnamese, was employed by the bank from 1980 until her termination in February 2008. During the period relevant to this lawsuit, she was the Lead Customer Representative at the bank's branch in Old Greenwich, Connecticut. In that position, Nguyen was responsible for counting the cash in the branch's ATM, counting the amount in cash boxes, balancing the amounts in the vault, and making sure all the audits, logs and reports were completed and signed. Each week, Nguyen was responsible

---

[1] The facts related herein are taken from the parties' Rule 56 statements, depositions, affidavits and supporting exhibits and are undisputed except where otherwise noted.

for counting the cash in the ATM's drawers, known as the "ATM fine count." Nguyen was to remove each of the four cartridges from the machine, and count the cash in each cartridge. After that, Nguyen was to complete a fine count sheet noting the cash in each cartridge and the total amount of cash, and then sign the sheet. A second employee is also required to confirm the count and sign the fine count sheet.

When the Old Greenwich branch was audited by the bank in 2007, the auditors noted the fine count had not been done at times. One of the auditors reminded Nguyen that she must do the fine count on a weekly basis. On January 16, 2008, another audit took place. The auditors could not find an ATM fine count sheet for January 8, 2008, and questioned Nguyen about it. She told the auditors she had completed the ATM fine count for that day, but didn't know where the sheet was located. A couple of days later, Nguyen told her manager that she found the sheet. When the auditors returned on January 30, 2008, Nguyen produced the missing sheet for January 8. The auditors researched the issue, and found that according to videotape, the cartridges which hold the cash were never removed in January 8, 2008, so as to permit the fine count. On February 6, 2008, when Nguyen was confronted with this inconsistency, she twice denied it but later confessed that she did not do the fine count but made up the cash figures for each of the four cartridges to correspond to the total cash amount. Nguyen was fired that same day. At the termination meeting with Nguyen were Marissa Figerle, Lead Regional Operations Manager, Jennifer Volturno, Director of Regional Operations, and a "Ms. Smith," Human Resources Director. Nguyen testified at her deposition in this case that she did not know if any of these people knew that she was Vietnamese. She also testified that she has never heard anyone make an offensive comment about her race or national origin.

Nguyen argues she was fired not because of her falsification of the fine count sheet, but because she is Vietnamese. In support of this argument, she alleges that similarly situated non-Vietnamese employees of the bank have been treated significantly more leniently than she was treated. For example, at her deposition, Nguyen identified a teller named "Lynn" whom she believes had "cash differences" (a difference between the amount of cash in her drawer and what records reflect about the amount of cash that should be in the drawer), and a manager named "Camella" whom Nguyen claimed did not explain to a customer that an investment account she opened was not insured by the FDIC. Nguyen does not know if either Lynn or Camella ever falsified any documents. Neither Camella nor Lynn were fired for their misconduct, but apparently received lesser discipline.

Nguyen also points to how the bank treated her co-worker, Mary Williams, concerning the fine count incident. Williams is a customer service employee at the same Old Greenwich branch in a non-supervisory position, and an African-American. Nguyen asked Williams to co-sign the fine count sheet for January 8, 2008. That day Williams also signed an ATM entry log in which she wrote that the fine count had been done. When asked by her supervisors about her signature on the ATM balance sheet and the ATM entry log, Williams said she would never sign a sheet if it had not been done, and also that Nguyen would not ask Williams to sign the sheet if a fine count had not been done. Williams also told her supervisors that she believed a fine count had been done because Nguyen was her Lead Customer Service Representative, and if Nguyen said an ATM fine count was done, then Williams trusted her and it must have been done. Williams received only a written warning for not observing the fine count and entering her signature on the falsified fine count sheet, and was not terminated. The discipline memorandum

addressed to Williams from Catherine Temaglio, VP Customer Experience Manager, states that "this recent incident displays that you were not protecting the bank's assets," and that "adherence to the requirements stated above should be seen immediately and sustained for the duration of your employment," and that "violation of any other Bank policy or procedure will be immediate cause for additional disciplinary action up to and including termination of employment."

Nguyen filed this suit in Connecticut Superior Court on February 24, 2010. It was removed to this Court on March 25, 2010. The bank now moves for summary judgment on the remaining counts.[2]

### III.   Applicable Law and Discussion

In a summary judgment motion, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); White v. ABCO Eng'g Corp., 221 F.3d 293, 300 (2d Cir. 2000); Carlton v. Mystic Transp., Inc., 202 F.3d 129, 133 (2d Cir. 2000) (citing Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1223 (2d Cir. 1994)). Once the moving party has met its burden, in order to defeat the motion the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial," Anderson, 477 U.S. at 255, and present such evidence as would allow a jury to find in his favor. Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000).

In assessing the record, the trial court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought. Anderson, 477 U.S. at 255;

---

[2] On November 23, 2010, this Court granted the bank's motion to dismiss the third count of the complaint for intentional infliction of emotional distress.

Graham, 230 F.3d at 38. "This remedy that precludes a trial is properly granted only when no rational finder of fact could find in favor of the non-moving party." Carlton, 202 F.3d at 134. Consistent with this standard, all evidence favorable to the nonmoving party must be credited if a reasonable jury could credit it. Evidence favorable to the moving party, on the other hand, must be disregarded unless a reasonable jury would have to credit it because it comes from a disinterested source and is uncontradicted and unimpeached. See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150-51 (2000). "When reasonable persons, applying the proper legal standards, could differ in their responses to the question" raised on the basis of the evidence presented, the question must be left to the jury. Sologub v. City of New York, 202 F.3d 175, 178 (2d Cir. 2000).

### A. Title VII Claim

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's race, color, religion, sex or national origin." 42 U.S.C. §2000e-2(a)(1). Title VII claims in which there is no direct evidence of discrimination are analyzed under the burden-shifting analysis set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under the McDonnell standard, to establish a prima facie case of discriminatory conduct based on an adverse job action, a plaintiff must show (1) that she is a member of a protected class; (2) that she was qualified for the position she held; (3) that she suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent. Feingold v. New York, 366 F.3d 138, 152 (2d Cir. 2004). The U.S. Court of Appeals for the Second Circuit has

characterized the evidence necessary for the plaintiff to satisfy this initial burden as "minimal" and "de minimis." See Woodman v. WWOR-TV, Inc., 411 F.3d 69, 76 (2d Cir. 2005); Zimmermann v. Assocs. First Capital Corp., 251 F.3d 376, 381 (2d Cir. 2001). Once a plaintiff has established a prima facie case, the burden of production shifts to the employer to articulate "a legitimate, non-discriminatory reason for" the adverse employment action. Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000). If the employer is able to do so, "the burden shifts back to the plaintiff to prove that discrimination was the real reason for the employment action." Id.

The bank argues it is entitled to summary judgment here because Nguyen has failed to establish a prima facie case of discrimination. Specifically, the bank has shown that Nguyen has not produced any evidence that would give rise to an inference of discriminatory intent. There is no genuine dispute that Nguyen falsified an ATM count and lied about it twice. Nguyen concedes that her actions violated bank policies prohibiting falsification of bank documents and dishonesty, which she knew was cause for her discharge. Nguyen produced no evidence that anyone at work ever mentioned the fact she was Vietnamese, and Nguyen stated in her deposition that she did not know if the bank supervisors who fired her knew she was Vietnamese. This evidence supports the bank's contention that Nguyen was fired only for violating bank policy by lying and falsifying records, and not based on discrimination.

Nguyen's principal argument in opposing summary judgment is that discriminatory intent can be inferred from the more lenient treatment of other non-Vietnamese employees who were similarly situated. To be "similarly situated," the individuals with whom Nguyen attempts to compare herself must be "similarly situated in all material respects." Shumway v. United Parcel

Service, Inc., 118 F.3d 60, 64 (2d Cir. 1997). Nguyen cites bank employees Lynn, Camella, and Mary Williams as comparators—the employees to whom she claims she is similarly situated. Nguyen has produced no evidence beyond her own assertions about the alleged misconduct of Lynn and Camella, or the discipline they received from the bank. Moreover, their employment responsibilities and their claimed misconduct are not similar to the plaintiff's. Nguyen has produced evidence about Williams' role in signing the falsified ATM count; however Nguyen has failed to show that Williams is similarly situated to Nguyen in "all material respects." First, Nguyen was Williams' supervisor, and it was Nguyen who had primary responsibility for the weekly ATM count. Williams was a customer service representative with no managerial or supervisory responsibility. See Gorzynski v. Jetblue Airways Corp., 596 F.3d 93, 109 n.7 (2d Cir. 2010) (stating that "an employee's position is relevant to the analysis" of whether or not the employee was similarly situated to comparators). Second, Nguyen and Williams engaged in very different conduct. Nguyen knowingly falsified the ATM numbers, and signed a sheet she knew to be false. When confronted, Nguyen twice lied about her deception before admitting to it. In contrast, Williams signed a sheet that she then believed to be accurate, based on Nguyen's representations. When Williams learned that the sheet was falsified, she admitted her misconduct and apologized. Williams' mistake was taking Nguyen at her word, and not confirming the count for herself. That error is materially different from Nguyen's misconduct. In order to be similarly situated, Nguyen would have to demonstrate the Williams engaged in comparable conduct. She did not. See Barney v. Consolidated Edison Co. of N.Y., 391 Fed. Appx. 993, 996 (2d Cir. 2010) (affirming a grant of summary judgment in a case where the district court found the plaintiff, who intentionally entered falsified overtime data and then

attempted to cover it up, was not similarly situated to her supervisor, who approved the erroneous data).

For these reasons, Nguyen has failed to show any circumstance that could lead to an inference of discriminatory intent, and therefore has failed to meet even her minimal burden to establish a prima facie case of discrimination. Even if Nguyen had met this burden and established a prima facie case, the bank has a legitimate, non-pretextual reason for her dismissal—Nguyen, a branch supervisor, violated bank policy by falsifying bank records and then lying about it. For these reasons, summary judgment is granted on the Title VII claim.

      **B.**      **Negligent Hiring and Negligent Supervision Claim**

In the second count of her complaint, Nguyen alleges that the bank "refused or neglected to train, instruct, monitor, adequately screen, hire or otherwise direct its agents, officers or employees" regarding Nguyen, and that as a result, Nguyen has suffered "severe adverse effects upon her mental and physical health . . . [and] severe emotional distress." Nguyen failed to address this claim in her memorandum in opposition to summary judgment, and at oral argument, Nguyen's counsel stated that she was not pursuing this claim. As such, the Court deems this claim abandoned. See e.g., Coger v. Stat of Conn. Dep't of Administrative Services, 309 F. Supp. 2d 274, 280–81 (D. Conn. 2004) ("Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way.") (internal citation omitted); Mathieu v. Whole Foods Market Group, Inc., No. 08cv1317, 2010 WL 965738 at * 9 (D. Conn. March 15, 2010) (granting summary judgment on, and deeming abandoned, claim for negligent supervision because plaintiff

failed to respond to the motion for summary judgment with respect to this claim). Summary judgment is granted as to this claim.

## IV. Conclusion

For the reasons set forth above, the defendant's motion for summary judgment [Dkt. # 32] is GRANTED.

SO ORDERED this  6th  day of June 2011, at Hartford, Connecticut.

      /s/ Christopher F. Droney
**CHRISTOPHER F. DRONEY**
**UNITED STATES DISTRICT JUDGE**